1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RICHARD JOSEPH CRANE,

11          Plaintiff,                    No. 2:11-cv-0663 KJM CKD P

12      vs.

13   MIKE McDONALD, et al.,

14          Defendants.          FINDINGS & RECOMMENDATIONS

15   _____/

16   I.  Introduction

17          Plaintiff is a state prisoner, proceeding pro se and in forma pauperis, who seeks

18   relief pursuant to 42 U.S.C. § 1983.  This case proceeds on the amended complaint filed January

19   9, 2012.  (Dkt. No. 21 ("FAC").)  On May 8, 2012, the court found that, for screening purposes,

20   plaintiff stated an Eighth Amendment claim concerning the denial of outdoor exercise against

21   three defendants at two prisons.  (Dkt. No. 22 at 5.)

22          Before the court is plaintiff's September 14, 2012 motion for preliminary

23   injunction, to which defendant Davey has filed an opposition.[1]  (Dkt. Nos. 31, 36.)  Plaintiff has

24

25          [1] Because plaintiff is currently housed at High Desert State Prison and Davey is identified
     in the FAC as employed at HDSP, the court ordered Davey to respond to plaintiff's motion.
     (Dkt. No. 33.)  Defendants have clarified that Davey no longer works at HDSP.  (Dkt. No. 36 at
26   2, fn.1.)

1

1  also filed two "supplements" to the motion in lieu of a reply.  (Dkt. Nos. 37, 55.)   Plaintiff seeks

2  an order requiring defendants to allow plaintiff two hours a day of outdoor exercise, among other

3  relief unrelated to the claims at issue.  (Dkt. Nos. 31-1 at 10; 31-2 at 2.)

4  II.  Legal Standard

5             The legal principles applicable to a request for injunctive relief are well

6  established.  To prevail, the moving party must show either a likelihood of success on the merits

7  and the possibility of irreparable injury, or that serious questions are raised and the balance of

8  hardships tips sharply in the movant's favor.  See Coalition for Economic Equity v. Wilson, 122

9  F.3d 692, 700 (9th Cir. 1997); Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374,

10  1376 (9th Cir. 1985).  The two formulations represent two points on a sliding scale with the focal

11  point being the degree of irreparable injury shown.  Oakland Tribune, 762 F.2d at 1376.  "Under

12  any formulation of the test, plaintiff must demonstrate that there exists a significant threat of

13  irreparable injury."  Id.  In the absence of a significant showing of possible irreparable harm, the

14  court need not reach the issue of likelihood of success on the merits.  Id.

15  III.  Parties' Arguments

16             Plaintiff is housed in the 'B' Sensitive Needs Yard (SNY) at High Desert State

17  Prison, a protective custody facility.  (Dkt. No. 31-1 at 8.)  He claims that he is being

18  unconstitutionally deprived of outdoor exercise.[2]  Plaintiff asserts that since being transferred to

19  HDSP in September 2008, he "has been denied outdoor exercise for a great amount of time[.]"

20  (Dkt. No. 31-1 at 5.)  He also asserts that he "has been on a continuous course of lockdown on

21  protective custody (SNY) facilities" and that defendants are depriving him of outdoor exercise

22  "because they do not want to run the exercise yards."  (Id. at 6.)

23             In declarations submitted in support of plaintiff's motion, an inmate witness asserts

24  that the SNY program went on lockdown in August 2012; another inmate describes a "rolling

25

26       [2] Plaintiff also asserts that defendants are retaliating against him for protected activity, but
plaintiff's retaliation claims did not survive the screening process.  (See Dkt. No. 22 at 5-6.)

1   lockdown program" announced in March 2010.  (Id. at 14, 17.)  In a June 7, 2010 response to

2   plaintiff's appeal Log No. HDSP-B-10-00418 concerning March 2010 program changes, the

3   reviewer stated that plaintiff's "current program allows for inmates to attend yard activities every

4   other day[.]"  (Id. at 24.)

5              Plaintiff's alleged health problems include Hepatitis C[3], a low white blood count,

6   scoliosis and spondylosis of the spine, and damage to his discs.  (Id. at 5-8.)  His motion does not

7   specify how a lack of outdoor exercise is contributing to these problems.

8              In opposition to the motion, defendant Davey argues that plaintiff has neither

9   shown a likelihood of success on the merits nor that he will suffer irreparable harm if injunctive

10  relief is denied.  (Dkt. No. 36.)

11             In an attached declaration, HDSP's Public Information Officer N. Albonico asserts

12  that, since March 2012, plaintiff has been subject to two lockdowns or modified programs.  The

13  first took place in March 2012, after staff discovered that a metal sheet pan was missing and put

14  inmates on lockdown while they searched for it.  The second took place in August 2012, after

15  several correctional staff members were battered by inmates on Facility C and prison staff put

16  inmates on lockdown while they investigated this incident.  In both cases, lockdown was ended

17  "as soon as prison officials determined it was safe to do so."  As of October 10, 2012, plaintiff

18  was not on lockdown.  (Dkt. No. 36-1 at 3.)

19             In a second attached declaration, L. Schmidt, a nurse practitioner at HDSP,

20  declares that s/he examined plaintiff on October 10, 2012 "as a part of a weekly follow-up

21  examination for his Hepatitis C treatment."  At the examination, plaintiff complained of leg pain,

22  which he attributed to being on lockdown/modified programming.  When plaintiff reported leg

23  pain in the past, he was advised to do leg stretching and walking in his cell as much as possible to

24  alleviate his symptoms.  He was also given a prescription for Tylenol.  Schmidt's October 2012

25

26       [3] Plaintiff refers to his "debilitating treatment" for Hepatitis C.  He asserts that he takes
     Ribavirin and Interferon, "which is known as liquid chemotherapy."  (Id. at 7.)

1   examination "revealed no obvious signs of adverse physical effects . . . from being on lockdown

2   or modified programming.  Crane's body aches and leg pains are more likely related to his

3   treatment for Hepatitis C."  (Dkt. No. 36-1 at 5-6.)

4          Plaintiff did not file a reply to the opposition, but a supplement to his motion.  In it,

5   he makes new allegations unrelated to the denial of exercise claim on which this case proceeds,

6   e.g., "Defendants acting in conspiracy have attempted to have the plaintiff killed, and have had

7   him attacked three (3) times since September 17, 2008[.]"  (Dkt. No. 48 at 6.)  Similarly,

8   plaintiff's second supplemental reply filed January 31, 2013 alleges that prison officials "staged"

9   an incident in which another inmate stabbed plaintiff with a pencil.  (Dkt. No. 55.)  Plaintiff is

10  advised that allegations unrelated to the claims at issue in this action will be disregarded.  (See

11  Dkt. No. 22.)

12  IV.  Discussion

13         Plaintiff alleges in the FAC that he was was denied outdoor exercise numerous

14  times since being transferred to HDSP in September 2008.  (Dkt. No. 21 at 4.)  Attachments to the

15  FAC indicate that Facility B was placed on lockdown between October 23, 2008 and December 2,

16  2008 in the wake of a report that unidentified inmates were planning on assaulting staff.  (Dkt.

17  No. 21 at 57, 66-67.)  Another attachment documents plaintiff's complaint that he was placed on

18  lockdown in September and October 2008 and March and April 2009.  (Id. at 61.)  In an April

19  2009 inmate appeal, plaintiff claimed to have been denied outdoor exercise for 50 days.  (Id. at

20  81.)  He claimed to be on lockdown again in July 2009.  (Id. at 82.)  Additional lockdowns of

21  Facility B took place in September and October 2009, which prison officials asserted were for the

22  purpose of investigating violent activity by inmates.  (Id. at 72-73.)

23         In his motion for  preliminary injunction, plaintiff asserts that since 2008, he has

24  been denied outdoor exercise for "a great amount of time[,]" but offers no additional evidence of

25  lockdowns or denials of outdoor exercise prior to March 2010.

26  \\\\\

1    In opposing the motion, Davey is silent as to how often, and for how long, plaintiff

2  was denied outdoor exercise between September 2008 and March 2012.  He offers evidence that

3  plaintiff has only been on lockdown twice since March 2012 and was not on lockdown as of

4  October 10, 2012.

5    At this stage, the court need not reach the likelihood of plaintiff's success on the

6  merits of his claims against Davey because plaintiff has not made a significant showing of

7  possible irreparable harm.  Plaintiff has offered only vague assertions that lack of outdoor exercise

8  is contributing to his poor health.  His suggestion that he "contracted" Hepatitis C and a low white

9  blood count because of his lack of outdoor exercise is not credible (see Dkt. No. 31-1 at 5), and no

10  evidence shows that plaintiff's spinal condition or leg pains are attributable to the lockdowns at

11  HDSP.  As plaintiff himself describes his treatment for Hepatitis C as "debilitating" and akin to

12  "liquid chemotherapy," it would appear that at least some of his discomfort is attributable to this

13  treatment.  The evidence further suggests that, as of October 2012, plaintiff was receiving weekly

14  medical checkups and Tylenol for his aches and pains.  At that time, according to the nurse who

15  examined him, he had no obvious physical problems stemming from being on lockdown or

16  modified programming.  On this record, plaintiff has not shown that he is at risk of irreparable

17  harm if he does not receive two hours a day of outdoor exercise or similar injunctive relief.

18  V.  Conclusion

19    For the foregoing reasons, IT IS HEREBY RECOMMENDED that plaintiff's

20  motion for preliminary injunction (Dkt. No. 31) be denied.

21    These findings and recommendations are submitted to the United States District

22  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

23  days after being served with these findings and recommendations, any party may file written

24  objections with the court and serve a copy on all parties.  Such a document should be captioned

25  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

26  shall be served and filed within fourteen days after service of the objections.  The parties are

1  advised that failure to file objections within the specified time may waive the right to appeal the

2  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   Dated: February 6, 2013

4  _____

5  CAROLYN K. DELANEY
   UNITED STATES MAGISTRATE JUDGE

6

7

8  2
   cran0663.fr_pi

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26